# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

PATRICK A. McGAIL,

        Petitioner,    :    Case No. 3:22-cv-119

                District Judge Walter H. Rice
- vs -                Magistrate Judge Michael R. Merz

TOM WATSON, WARDEN,
  North Central Correctional Institution,

        Respondent.    :

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought pursuant to 28 U.S.C. § 2254 by Patrick McGail with the assistance of counsel, seeks relief from his convictions in the Common Pleas Court of Miami County, Ohio. It is ripe for decision on the Petition (ECF No. 1), the State Court Record with Exhibits 1-35 (filed as ECF No. 11 in Case No. 3:17-cv-251) and Exhibits 36-51 (ECF No. 14), the Return of Writ (ECF No. 15), and Petitioner's Reply (ECF No. 19).

**Litigation History**

On December 20, 2013, a Miami County grand jury indicted McGail on two counts of murder in violation of Ohio Rev. Code § 2903.02(B) (counts 5 and 7), one count of aggravated burglary in

1

violation of Ohio Rev. Code § 2911.11(A)(2) (count 6), and one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) (count 8), all in connection with drug trafficking. All charges carried a firearm specification. A jury found McGail guilty on all counts.

Before sentencing, McGail moved for a new trial based on juror misconduct. After the motion was denied, McGail was sentenced to twenty-four years to life imprisonment. The Ohio Second District Court of Appeals remanded for merger of the murder and aggravated robbery counts and resentencing. *State v. McGail,* 55 N.E.3d 513 (Ohio Ct. App. 2015), appellate jurisdiction declined, 145 Ohio St. 3d 1460 (2016). The Common Pleas Court imposed the same aggregate sentence as before.

McGail then brought a habeas petition in this Court, raising one ground for relief:

> **GROUND 1:** McGail was deprived of his Sixth Amendment rights to an impartial jury and to confront the evidence against him due to juror misconduct and the subsequent application of the *aliunde* rule.

*McGail v. Noble*, No. 3:17-cv-251 (Petition, ECF No. 1, Page ID 5). The case was referred to the undersigned who recommended the writ be issued, releasing McGail from custody unless the Common Pleas Court held an evidentiary hearing regarding the juror misconduct claim. Judge Rice adopted that recommendation and entered judgment November 13, 2018.

Notified of the issuance of the writ, Miami County Common Pleas Judge Stacy Wall conducted the hearing after which the parties stipulated that the condition of the writ had been satisfied. The Conditional Writ was dissolved on February 15, 2019 (ECF No. 29 in Case No. 3:17-cv-251).

Only one juror testified at the evidentiary hearing that the foreman's comment about McGail's church attendance impacted her verdict. For reasons she explained at length, Judge Wall concluded that juror's testimony was completely incredible and she denied the motion for new trial (Entry, State Court Record, ECF No. 14, Ex. 39). The Second District Court of Appeals affirmed, concluding Judge Wall did not abuse her discretion in finding the jury foreman's comment had no prejudicial impact on

2

the jury. *State v. McGail*, 163 N.E. 3d 270 (Ohio App. Jan. 27, 2021), appellate jurisdiction declined, 163 Ohio St.3d 1418 (2021).

McGail through counsel filed the instant Petition May 6, 2022, pleading one ground for relief:

> **Ground 1:** McGail was deprived of his Sixth Amendment rights to an impartial jury and to confront the evidence against him due to juror misconduct.

(Petition, ECF No. 1, PageID 8).

## Factual Context of the Case

The factual background of the case as found by the Second District Court of Appeals on direct appeal is as follows[1]:

> {¶ 3} The State presented evidence at trial that McGail and two companions, Jason Sowers and Brendon Terrel, helped plan and participate in an armed home invasion to steal marijuana from Nathan Wintrow[2]. Text messages between Sowers' phone and McGail's phone included planning of an event involving "Nate" after Sowers got off work at 9 p.m. on October 30, 2013. The messages discuss plans to sell the marijuana they expected to obtain and to split the profits 50/50. On the night of October 30, 2013, Sowers drove them to a parking lot in the vicinity of 218 East Canal Street, a residence shared by Nate Wintrow, his fiancé Saddie Barker, and the couple's two-year-old son. Sowers and his accomplices took with them three masks and two guns. McGail also always carried a U.S. Air Force survival knife that had been given to him by his deceased grandfather. Although McGail testified that he abandoned the others at the parking lot, the remainder of the testimonial and physical evidence indicated that upon exiting Sowers' vehicle, Terrel became nervous and decided to act as a "lookout." McGail and Sowers proceeded to the back of Wintrow's house where they broke a window, reached inside, and unlocked a

---

[1] On the formal distinction between findings of fact and the statement of facts on which a court of appeals is adjudicating the appeal, see paged 19, *infra*.
[2] The victim's name is consistently given as "Wintrow" in the State Court Record, but Petitioner spells the name "Withrow."

3

rear door. McGail and Sowers entered the house wearing masks and brandishing handguns. They immediately encountered Wintrow, Barker, and a third person, Kyle Ratcliffe, in a small laundry room at the rear of the residence. An altercation ensued. Ratcliffe threw McGail to the ground while Wintrow and Barker fought Sowers. During the fight, Sowers discharged his gun, striking Wintrow in the head with a bullet and killing him. Sowers and McGail then fled the house. Ratcliffe found McGail's knife lying on the floor. He picked it up and threw it at the intruders as they fled through the back yard. Also discovered at or near the scene were a tennis shoe, a handgun, and a white mask. McGail's recovered knife and the discarded mask later were determined to have his DNA on them.

{¶ 4} Shortly after the shooting, police found Sowers in his car in the parking lot where the trio had left it, which was about two blocks from 218 East Canal Street. He was sweating, out of breath, and wearing only one tennis shoe. He initially claimed to have been out jogging. Inside the car, police later discovered the handgun used to shoot Wintrow under the passenger seat, and wrapped in a dark "hoodie" on the passenger seat was a second white mask. At about the same time Sowers was discovered, police found Terrel walking along another nearby street also about two blocks from the scene of the shooting. He was wearing a dark hooded sweatshirt. As he was speaking with officers, a third white mask fell from his sweatshirt. Sowers admitted participating in the home invasion, and Terrel admitted being a lookout. Sowers told police that he and McGail had entered Wintrow's residence armed with guns and intending to steal marijuana. Sowers also admitted being the person who shot Wintrow. Terrel admitted participating in the planning of the home invasion and serving as the lookout. He also implicated McGail.

{¶ 5} Following the shooting, McGail walked to his girlfriend Jessica Shelton's home, which was a mile or less from the home invasion. She testified that he arrived shortly after 11:00 p.m. He was scared and visibly upset, had a fresh scratch on his nose and cuts on his back and wrist, and was wearing a short-sleeved blue t-shirt. She told the jury that McGail had admitted to her that he went inside Wintrow's residence with Sowers and had gotten into a fight. Shelton said McGail told her he heard a gunshot, saw someone on the floor, and fled the house, dropping his mask and knife. She had

4

>reported this same information to the police within a couple days of the shooting. Prior to trial, Sowers and Terrel pled guilty to various charges, and both testified for the State at McGail's trial.
>
>{¶ 6} For his part, McGail testified in his own defense. He claimed the plan to rob Wintrow had been devised by Brendon Terrel's older brother, Rick, who was also a marijuana dealer. Although he admitted being aware of the plan, he testified that he initially thought Rick Terrel was joking. According to McGail, Rick Terrel proceeded to obtain a gun, however, and accompanied McGail, Sowers, and Brendon Terrel in the car they drove to the parking lot near Wintrow's residence. At that point, McGail claimed he realized they were serious and told the group he was not participating and was leaving. McGail testified that Rick Terrel responded by taking McGail's knife and cutting him. McGail fled, leaving behind his knife, mask, and cell phone. He testified that he initially walked to the square in downtown Troy, Ohio, before proceeding to his girlfriend's house. He denied that he told his girlfriend that he was involved in the home invasion or shooting.

*McGail, supra*, at 519-20.

## Analysis

**Second or Successive?**

The instant Petition is the second habeas corpus petition filed seeking relief from the same state court conviction and sentence. 28 U.S.C. § 2244(b), enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), deprives a district court of jurisdiction to consider a second or successive habeas petition unless the circuit court of appeals has given the petitioner leave to file, which has not happened here. *Burton v. Stewart*, 549 U.S. 147 (2007); *Franklin v. Jenkins*, 839 F.3d 465(6th Cir. 2016). The determination of whether a petition is second or successive must be made in the first instance by

the District Court. *In re: Kenneth Smith*, 690 F.3d 809 (6th Cir. 2012); *In re Sheppard*, 2012 U.S. App. LEXIS 13709 (6th Cir. May 25, 2012).

> "Although Congress did not define the phrase 'second or successive,' . . . it is well settled that the phrase does not simply 'refe[r] to all § 2254 applications filed second or successively in time." *Magwood v. Patterson*, 561 U.S. 320, 331-32 (2010) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)). Instead, for example, "where . . . there is a new judgment intervening between . . . two habeas petitions, an application challenging the resulting new judgment is not 'second or successive' at all." *Id.* at 341-42; *see also, e.g., Panetti*, 551 U.S. at 944-45 (explaining that a second-in-time habeas petition is not second or successive if the claim(s) it raises would have been unripe at the time of the first petition). This court has clarified that the rule established by *Magwood*—that a second-in-time petition is not second or successive when it follows an intervening judgment—applies even when a petitioner, after successfully challenging his sentence in a first petition, then challenges "an unchanged and reinstated *conviction*" in the second petition. *King v. Morgan*, 807 F.3d 154, 155-56 (6th Cir. 2015). "[T]he existence of a new judgment," in other words, "is dispositive," *Magwood*, 561 U.S. at 338: if there is a new judgment, "the count begins anew," regardless of whether the new judgment "capture[s] [a] new sentence[] or [a] new conviction[] or merely reinstate[s] one or the other," *King*, 807 F.3d at 157.

*In re: Kenneth W. Smith*, 2018 U.S. App. LEXIS 8083 (6th Cir. Mar. 29, 2018).

In the Petition McGail concedes this is his second petition, but asserts it is not "second or successive" within the meaning of § 2244(b) because the predicate of the claim arose after the filing of the Petition in the prior habeas case and "lie [sic] in the trial court decision entered on February 19, 2020." (Petition, ECF No. 1-1, PageID 16, citing *In re Wogenstahl*, 902 F.3d 621, 627 (6th Cir. 2018).

> [A] habeas petition was filed in in the Southern District of Ohio under case number 3:17-cv-00251. Ultimately, the federal district court remanded the case for an evidentiary hearing. *McGail v.*

6

> *Noble*, No. 3:17-cv-00251, 2018 WL 5984055 (S.D. Ohio Nov. 14, 2018). This current petition is a continuation of those proceedings.
>
> Although this petition is numerically the second petition, it is not properly termed a "second or successive" petition pursuant to the Sixth Circuit. The Sixth Circuit, in *In re Wogenstahl*, stated, "[A] numerically second petition is not properly termed 'second or successive' to the extent it asserts claims whose predicates arose after the filing of the original petition." 902 F.3d 621, 627 (6th Cir. 2018) (citation omitted). The predicates of this particular petition lie in the trial court decision entered on February 19, 2020. Consequently, the issues raised now arose after and because of the filing of the original petition.

*Id.*

Respondent does not claim the instant Petition is second or successive, but if it were, this Court would not have subject matter jurisdiction to consider its merits. *Burton, supra.* Existence of subject matter jurisdiction is an issue a District Court must raise *sua sponte*. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).

Having done so, however, the Magistrate Judge concludes the instant Petition is not barred by 28 U.S.C. § 2244(b). This is not a "continuation" of the prior case: Petitioner did not seek to reopen the judgment in 3:17-cv-351 and the final judgment in that case has been fully executed.[3] Instead, it is properly seen as a new case attacking an asserted constitutional error that occurred in the state court case **after** this Court's judgment was final. That asserted new constitutional error is embedded in a new final appealable order, Judge Wall's judgment of February 19, 2020 (Entry & Decision, State Court Record, ECF No. 14, Ex. 39). The Magistrate Judge concludes this Court has jurisdiction to consider the instant Petition on the merits.

---

[3] Petitioner asserts this Court "remanded" the case to the Common Pleas Court for an evidentiary hearing. Technically, a remand is an order from an appellate court to a trial court in the same judicial system. We have no authority to "remand" a state court judgment to the trial court. However, issuance of a conditional writ of habeas corpus where satisfaction of the condition depends on new trial court action has very much the same effect.

**Merits**

    **The Positions of the Parties**

McGail's sole ground for relief claims he was denied a fair trial by juror misconduct in violation of his Sixth Amendment rights to be convicted only upon evidence introduced in open court and to confront the witnesses against him (Memorandum in Support of Petition, ECF No. 4, PageID 30, relying on *Parker v. Gladden*, 385 U.S. 363, 365 (1966); and *Turner v. State of Louisiana,* 379 U.S. 466, 472-73 (1965)).

McGail's defense at trial consisted largely of his own testimony denying involvement in the home invasion and character evidence from himself and others about his heavy involvement in the past in church activities at St. Patrick's Catholic Church in Troy. It is now an adjudicated fact that the jury foreman told the jury that he himself was a member of that congregation and that he "had not seen McGail in church lately." The parties stipulated that this comment by the foreman violated McGail's constitutional rights. The foreman was purportedly speaking from personal observation, but not under oath and without McGail's having an opportunity to cross-examine.

The critical question raised by this admitted fact is whether or not the constitutional violation was harmless. Petitioner argues it was prejudicial, emphasizing its purported impact on Juror Kylie Spiers[4] and likely impact on other jurors as well because of its religious nature (Memo in Support, ECF No. 4, PageID 34-38).

With one exception, Respondent raises no affirmative defenses, but asserts the Ohio courts' decision is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent. The exception is Respondent's assertion that Petitioner has

---

[4] This was the juror's name at the time of trial and she is consistently referred to by this name in the state court proceedings and in the prior habeas case. Petitioner advises us that she is now known as "Kylie Kautz." Intending no disrespect to this person and whatever her reasons may have been for changing her name, this Report will refer to her as "Spiers" for consistency among the opinions.

8

procedurally defaulted on his claim that the Ohio courts should not have considered the subjective impact of the foreman' statement on the jurors, but rather should have considered only the likely objective impact on an average rational juror (Return, ECF No. 15, PageID 925-26).  Otherwise, Respondent defends the state courts' decision directly on the merits.

Respondent spends three paragraphs arguing its procedural default defense.  In contrast, Petitioner spends six pages arguing against procedural default (Reply, ECF No. 19, PageID 932-37).  On the merits, Petitioner again emphasizes the religious nature of the offending comment. *Id.* at PageID 938.  Second, he notes that Respondent did not comment on the lack of opportunity he had to refute the comment.  *Id.*  Third, he reiterates that the state courts placed too much reliance on the strength of the evidence of guilt. *Id.* at 938-39.  Fourth, he finds unpersuasive Respondent's efforts to distinguish *Parker*. *Id.* at PageID 939-41.  Fifth, he again argues the irrelevance of subjective impact, contending "The question the state courts were to analyze, and this Court is called to consider, is what impact the foreman's improper statements was [sic] likely to have on a hypothetical reasonable juror." *Id.* at PageID 941.  The only subjective effect the Ohio courts should have considered is the "impact of the statement on the jurors as it related to the length of discussion the improper statements spurred." *Id.* citing *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000).  Finally he claims that the "relevant substance of [Spiers'] affidavit—which the prior district court viewed with grave concerns regarding the impact on the jury—was confirmed by the evidentiary hearing." *Id.* at PageID 942.

**Magistrate Judge's Analysis**

**Procedural Default**

The Magistrate Judge finds that Respondent's procedural default defense is not well taken. That defense bars habeas consideration of claims not fairly presented to the state courts. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).

Respondent raises the defense to bar consideration of Petitioner's argument that a trial court conducting a *Remmer* hearing may only consider the likely objective impact of extraneous evidence on a hypothetical reasonable juror, rather than the actual subjective impact on the jurors who heard it. That is an argument about whether a court should admit certain evidence in a *Remmer* hearing and how the court should assess the evidence that has been gathered.

The claim that has been made here is that the extraneous evidence from the jury foreman violated Petitioner's Sixth Amendment rights. That claim has been fairly presented to all of the courts who have heard the case. The procedural default doctrine does not preclude a new or somewhat modified argument made in favor of a claim already fairly presented, as this claim was.

The Magistrate Judge agrees with Petitioner that the first large section of the Return arguing procedural default (ECF No. 15, PageID 896-900) does not cite cases in support of particular relevant proposition of laws relevant to this case. Instead it appears to be boilerplate language which is familiar to the Court from the usual habeas corpus practice of the Attorney General's Office. Because it is not applied to particular instances of alleged procedural default in the case in suit, it is not helpful to the Court.

Because it is a new argument about a constitutional claim which was fairly presented to the state courts, rather than a new claim, Petitioner's argument about objective versus subjective impact is not barred by procedural default.

## Was the Constitutional Error in this Case Harmless?

The parties agree the jury foreman's comment about McGail's church attendance was unconstitutional. The question to be resolved in this case is whether the error was harmless or not. Both Judge Wall and the Ohio Second District Court of Appeals understood this to be the critical question and decided it on the merits.

Judge Wall began her decision by discussing what the jurors' testimony showed about what Foreman Westgerdes actually said (Entry and Decision Finding Defendant was not Prejudiced by Juror Misconduct, State Court Record, ECF No. 14, Ex. 39, PageID 681-85). She then held the burden of proof of prejudice was on McGail and he had not met it, *Id.* at 685-707. Her conclusion was prefaced by a thorough discussion of the credibility of all eleven jurors who testified[5], with particular attention to Juror Spiers whom she found completely incredible for reasons she thoroughly discussed.

Represented by the same counsel who represents him here, McGail appealed to the Ohio Second District Court of Appeals, pleading as his sole Assignment of Error: "The Common Pleas Court erred in finding that McGail was not prejudiced when his constitutional right to an impartial jury and to confront the evidence against him was violated." He claimed the reasons Judge Wall gave for finding no prejudice "have already been rejected by federal courts reviewing this case."

---

[5] The twelfth juror was out of state. On interview by an investigator, he did not remember any comment from the foreman.

11

(Appellant's Brief, State Court Record, ECF No. 14, PageID 722). He noted that there is a presumption of prejudice when extrajudicial information reaches a jury. *Id.* at PageID 724, citing *Remmer v. United States,* 347 U.S. 227 (1954), and then noted the expressions of concern about prejudice Judge Rice and the undersigned expressed in the first habeas case.

The Second District affirmed. *State v. McGail*, 167 N.E. 3d 70 (2nd Dist. Jan. 27, 2021)(Froelich, J.). It rejected McGail's argument that this Court's judgment in the prior case created dispositive law of the case. *Id.* at ¶ 82. Judge Froelich noted that "The only information before the federal court about the foreman's statement and its impact was Spiers's affidavit." *Id.* at ¶ 86. But now, after the evidentiary hearing,

> we have the benefit of the evidence from the evidentiary hearing and the trial court's factual findings to inform us of the nature of Westgerdes's statement, the context that the statement was made, the credibility of Spiers and the allegations in her affidavit, and the effect of Westgerdes's statement on the jurors. Most notably, Spiers acknowledged at the evidentiary hearing that portions of her affidavit were incorrect, including the "so he must be lying" portion of her allegation regarding Westgerdes's church comment. In short, given that we are presented with a different factual landscape, we conclude that the federal court's evaluation of prejudice under more limited facts is not dispositive.

*Id.* at ¶ 87.

As to the impact of the foreman's comments, "Leaving Spiers (Juror #11) aside, the trial court found that the jurors represented the typical rational juror and that the foreman's comment had no impact on those jurors' decisions at trial." *Id.* at ¶ 89. Acknowledging that impact on one juror could be sufficient to prove prejudice, the Second District concluded "On this record, the trial court's conclusion that Spiers's testimony was not credible was not unreasonable, arbitrary, and unconscionable" (i.e. not an abuse of discretion under Ohio law) and there was no error in

Judge Wall's conclusion "that the actual jurors were representative of rational jurors." *Id.* at ¶ 94. It found *Parker, supra*, to be factually distinguishable and affirmed. *Id.* at ¶ 101.

McGail exhausted available state court remedies by appealing to the Supreme Court of Ohio, but that court declined jurisdiction. *State v. McGail*, 163 Ohio St.3d 1418 (2021).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

McGail claims the Second District's decision fails both tests (Reply, ECF No. 19, PageID 937). He asserts the Second District's decision fails to give "any weight, let alone great weight" to the religious nature of Westgerdes' comment and the failure to do so was contrary to "clearly established law." *Id.* at PageID 938.

As to § 2254(d)(1), McGail cites no Supreme Court authority at this point in his Reply to support his claim that the Second District's decision is either contrary to or an objectively unreasonable application of clear Supreme Court precedent.

As to § 2254(d)(2), the weight to be given to the religious nature of Westgerdes' comment, the factual conclusions reached by the Second District are not unreasonable in light of the evidence at the hearing. Judge Froelich's opinion in no way denies the religious nature of the comment or suggests that the religious nature of the comment is irrelevant. The salient question is what impact

13

the comment had. Every juror except Spiers testified either that he or she did not hear it or that it made no difference in his or her vote. Every juror, including Spiers, testified there was no discussion of the comment.

Certainly the undersigned and Judge Rice understood that extrajudicial evidence about a religious matter had a higher likelihood of being prejudicial than other types of evidence, but this Court did not conclude that a comment about McGail's religious practice such as the one attributed to Westgerdes in the original Spiers' Affidavit would have been *per se* prejudicial. Had this Court done so, there would have been no need for an evidentiary hearing. The purpose of that hearing was to determine as best as possible what Westgerdes actually said and what impact it had.[6] McGail has not shown in any way that the evidence at the hearing[7] shows the religious nature of the foreman's comment produced actual prejudice against him.

Constitutional error in a habeas case is not required to be harmless beyond a reasonable doubt as is required on direct appeal by *Chapman v. California*, 386 U.S. 18 (1967). Rather, constitutional error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946). A federal court may grant habeas relief only if a constitutional violation had a substantial and injurious effect or influence in determining the jury's verdict. *Williams v. Bauman*, 759 F.3d 630, 637 (6th Cir.2014). This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error. *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004). *Brecht*

---

[6] Note that the original Spiers' Affidavit attributed to Westgerdes the statement that McGail must be lying, but Spiers admitted at the hearing that he did not say that and the "lying" comment was her own interpolation.
[7] In attempting to show prejudice here, McGail is limited to the evidence presented to the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011); *Shinn v. Martinez Ramirez,* 596 U.S. ___, 142 S.Ct. 1718 (2022).

applies post-AEDPA "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705." *Fry v. Pliler*, 551 U.S. 112 (2007).

Judge Wall and the Second District did not cite *Brecht*. Instead, both courts found there was no prejudicial impact of the Westgerdes comment. Logically, a finding of no prejudicial impact is the equivalent of finding no harmful impact. As stated above, McGail has not shown that the finding of no prejudicial impact is unreasonable in light of the evidence presented at the hearing.

Secondly, McGail challenges Respondent's failure "to address the likelihood of prejudice caused by McGail's lack of opportunity to diminish the impact of the juror foreman's improper statements." (Reply, ECF No. 19, PageID 938). However, McGail cites to no evidence that the lack of confrontation contributed anything to a likelihood of prejudice. Judge Wall treated the evidentiary hearing as being held in support of a motion for new trial and this Court had set the parameters of that hearing: McGail was to have an opportunity to establish what Westgerdes said and what its impact was on the jury. To that end, Westgerdes was available to be cross-examined. Moreover, there is no indication McGail sought to present at the hearing any evidence that would have refuted the comment by showing recent religious practice.

Most of the evidence about McGail's religious practice related to his practice at a younger age, around the time of his Confirmation as a young teenager, and came from the St. Patrick's youth director. The evidence about recent practice was his uncorroborated claim he had gone to church after Wintrow's death to ask forgiveness for not having done more to prevent the crime. Was there available corroboration? Available detail about his request for forgiveness? Did he ask for forgiveness apart from private prayer? Nothing responsive to these questions was offered.

Petitioner notes Respondent did not "challenge [his] character evidence" and so Westgerdes' comment was not cumulative. (Reply, ECF No. 19, PageID 938). We have no explanation of that from the State's trial counsel, but it could well be that the State wished to focus on the facts of the crime and regarded evidence of McGail's religious practice six or seven years earlier as a distraction.

McGail next argues that the Second District's decision is an unreasonable application of *Parker* (Reply, ECF No. 39, PageID 939-41). Parker was convicted of second-degree murder at trial and sought post-conviction relief on the basis of extrajudicial statements by the sequestration bailiff: 'Oh that wicked fellow (petitioner), he is guilty'; and on another occasion said to another juror under similar circumstances, 'If there is anything wrong (in finding petitioner guilty) the Supreme Court will correct it.' 385 U.S. at 363-64. Finding a Sixth Amendment violation, the trial court had granted relief. The Oregon Supreme Court had reversed[8], but the Supreme Court of the United States reinstated the relief, following *Turner v. State of Louisiana*, 379 U.S. 466 (1965). One juror had testified that that she was prejudiced by the statements, which supported the trial court's finding 'that the unauthorized communication was prejudicial and that such conduct materially affected the rights of the defendant.' *Id.* at 470-71. Dissenting from the brief *per curiam* opinion, Justice Harlan warned how the decision might encourage convicted felons to "'intimidate, beset and harass,' a discharged jury in an effort to establish possible grounds for a new trial." 385 U.S. at 369, citing *Stein v. People of State of New York*, 346 U.S. 156, 178, 73 S.Ct. 1077, 1089, 97 L.Ed. 1522,

There are some obvious distinctions of this case from *Parker*: the bailiff was a state official put in place to manage the jury and his opinion was on the ultimate question – guilt or innocence

---

[8] Oregon's ten-person verdict rule, a remnant of Jim Crow, featured in the decision. See *Edwards v. Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021); and *Ramos v. Louisiana*, 590 U. S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), does not apply retroactively to cases on collateral review. *Ramos* plainly announced a new rule because it overruled an existing precedent, *Apodaca v. Oregon*, 406 U.S. 404 (1972).

16

– rather than an ancillary question relating to character as here. But more importantly, the Magistrate Judge finds no objectively unreasonable application. In *Parker* the trial judge held a hearing and found prejudicial impact[9]. Here the trial judge held an extensive hearing and found no prejudicial impact. *Parker* did not hold that extrajudicial contact is prejudicial *per se*, but upheld the trial court's weighing of the evidence of impact. Although this Court found the extrajudicial comment as reported in the Spiers' Affidavit to be of serious concern, Judge Rice ordered a hearing on the impact. If prejudicial impact were a foregone conclusion, there would have been no need for a hearing. If McGail believed the law did not warrant a hearing, he could have appealed, which he did not. Of course, as we now know, the Spiers Affidavit seriously distorted the facts. For example, her attribution of the comment "he was lying" to Westgerdes was in fact her own inference.

Next McGail claims the state court placed too much emphasis on the strength of evidence of guilt in finding lack of prejudice (Reply, ECF No. 19, PageID 938-39). However, he gives no reason why jurors could not reasonably have found the other evidence of guilt persuasive. There was a good deal of physical evidence that McGail was present when the crime was committed and had participated in the planning. Co-defendants' testimony undermined his claim to have withdrawn from the conspiracy before it was carried out. Immediately after leaving the scene, McGail fled to his girlfriend's home where he admitted to far more involvement than he did on the witness stand. *McGail*, 55 N.E. 513, ¶ 5. Her testimony and that of the co-conspirators almost

---

[9] McGail argues that "**nowhere in *Parker* is there a suggested requirement that the court evaluate the credibility of jurors who claim to have been prejudiced**." (Reply, ECF No. 19, PageID 940, emphasis sic). This argument ignores the fact that there was a *Remmer* hearing in *Parker* at which impact on individual jurors was considered. The Supreme Court's opinion does not suggest this was error or that the result – finding at least one juror seriously impacted – was irrelevant.

17

certainly had more negative impact on McGail's credibility than the positive impact of McGail's religious education teacher's testimony about his church participation several years in the past.[10]

McGail again argues the distinction between subjective and objective impact. He claims: "The question the state courts were to analyze, and this Court is called to consider, is what impact the foreman's improper statements was likely to have on a hypothetical reasonable juror." (Reply, ECF No. 19, PageID 941). To the contrary, what Judge Rice ordered was "The evidentiary hearing will concern questions of what the jury foreperson said about McGail and/or his family's church attendance and/or participation **and** its impact on the jury and its members." 2018 WL 5984055 *8 (emphasis in original). Be that as it may, Judge Wall's opinion considered both questions. She found the jurors except for Spiers to be rational jurors, but she also found Westgerdes' comment did not prejudice any one of them individually.

McGail next argues "No significant facts changed to justify the state courts' determination that a different factual landscape permitted departure from the District Court's analysis**."** The Magistrate Judge strongly disagrees. The only factual basis for this Court's decision in the prior habeas case was the Spiers' Affidavit. When called upon to testify live and subject to cross-examination, she admitted to serious problems with the Affidavit's account of the facts. Most importantly she admitted that her conclusion in the Affidavit that Westgerdes said McGail was lying was her own inference and not something Westgerdes said. If we accept McGail's premise that a jury foreperson like Westgerdes had as much authority with jurors as the bailiff in *Parker*, then Spiers had falsely attributed to Westgerdes a statement as damaging as the bailiff's in *Parker*:

---

[10] Westgerdes' reported comment that "people change", made during jury consideration of the church participation evidence, is a completely proper comment about the weight of evidence actually presented, as opposed to the interjection of Westgerdes' observational testimony about McGail's current level of practice.

18

Parker's bailiff said he was guilty; Westgerdes allegedly said "he's lying" when McGail's entire case was built on his credibility. And Spiers admitted Affidavit was wrong on this point.

McGail criticizes Respondent for treating factual statements by the Second District as "findings of fact":

> Respondent suggests that the district court of appeal's summary of the evidentiary hearing constitutes "findings of fact" under 28 U.S.C. § 2254(e), the state court of appeals did not make findings of fact, the state trial court did, so it is questionable why a recitation of the court of appeals decision would be viewed as dispositive here.

(Reply, ECF No. 19, PageID 942, n.5). In citing the Second District's statement of facts as the relevant factual findings entitled to deference under 28 U.S.C. § 2254(e), the Respondent, as is standard with the Attorney General's Office, relies on *Warren v. Smith,* 161 F.3d 358 (6th Cir. Nov. 23, 1998). In explaining the standard under § 2254(e), the Sixth Circuit did not make this distinction, but merely held "we presume correct the factual findings made by the state court." *Id.* at 361. McGail does not suggest what difference this distinction makes in this case.

**Conclusion**

The Miami County Court of Common Pleas correctly interpreted our final judgment in the prior habeas case and gave Petitioner McGail the *Remmer* hearing to which he was entitled, finding first that his constitutional rights were violated by the jury foreman's comment. The trial court then found the constitutional violation was harmless. In doing so, it applied the relevant Supreme Court precedent, especially *Parker*, and its application was not unreasonable. Moreover its decision was not based on an unreasonable determination of the facts, given the evidence presented

at the hearing. Therefore it is respectfully recommended that the Petition herein be dismissed with prejudice.

When entering judgment in this case, the Court is obliged to make a ruling on the certificate of appealability issue. Because the parties have not briefed that issue, it is also recommended that if the Court accepts the recommendation to deny the writ, Petitioner be required to move for a certificate of appealability within thirty days of the date of that decision.

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

November 30, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge