# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

PATRICK A. McGAIL,

                           Petitioner,        :        Case No. 3:22-cv-119

                                                District Judge Walter H. Rice
       -  vs  -                         Magistrate Judge Michael R. Merz

TOM WATSON, WARDEN,
  North Central Correctional Institution,

                           Respondent.       :

---

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 23) to the Magistrate Judge's Report and Recommendations ("Original Report," ECF No. 20) recommending the Petition be dismissed with prejudice. Respondent's time to respond to the Objections has expired and no response has been filed. Judge Rice has recommitted the case to the Magistrate Judge for analysis of the Objections (Recommittal Order, ECF No. 24).

**Litigation History**

The history of this litigation is set forth in detail in the Original Report (ECF No. 20, PageID 946-50) and Petitioner does not object to the accuracy of that history. Although this is the

1

second habeas corpus case attacking the same criminal judgment as a prior case, the Original Report concluded it was not a "second or successive" petition within the meaning of 28 U.S.C. § 2244(b) and did not require permission from the Sixth Circuit to proceed. *Id.* at PageID 950-52. Respondent has not objected to that conclusion.

McGail pleads only one Ground for Relief:

> **Ground 1:** McGail was deprived of his Sixth Amendment rights to an impartial jury and to confront the evidence against him due to juror misconduct.

(Petition, ECF No. 1, PageID 8). For relief, he requests the Court vacate his conviction and remand the case for a new trial.[1]

The Original Report found McGail's conviction was tainted by unconstitutional juror misconduct, to wit, the comment by Juror Westgerdes, serving as foreman, that he attended the same church McGail claimed to attend (St. Patrick's Catholic Church in Troy) and had not seen McGail there "lately." In the Common Pleas Court, the parties stipulated this comment violated McGail's constitutional rights. The question to be decided is whether the violation was harmless or not.

The Original Report noted that both Common Pleas Judge Wall and the Ohio Second District Court of Appeals, on appeal from denial of McGail's post-evidentiary hearing motion for new trial, found the juror misconduct had no prejudicial impact on the outcome of his case (ECF No. 20, PageID 960). The Original Report concluded this finding was equivalent to a finding of harmlessness. *Id.* Neither party has objected to that conclusion. Because McGail had not shown

---

[1] As explained in the Original Report, this Court cannot technically "remand" the case to the state trial court. Instead, if it found McGail's claims warranted relief, the Court would issue a conditional writ requiring the State to release McGail or retry him within a given amount of time.

this finding was unreasonable in light of the evidence presented, it is entitled to deference under 28 U.S.C. § 2254(d)(2). *Id.*

**McGail's Objections**

McGail raises a series of objections to the Original Report which, because of the way they are structured, require consideration here *seriatim*. Before doing so, however, the Magistrate Judge offers here a summary reaction.

When one considers the Objections as a whole, they read as if McGail believes all the essential questions about habeas relief were already answered by the Court's granting a Conditional Writ in McGail's first habeas case, Case No. 3:17-cv-251.[2] Obviously the Magistrate Judge believed there was some function to be served in ordering an evidentiary hearing as did the Ohio courts. It was necessary in determining McGail's constitutional claims to decide what extrajudicial conduct happened and whether it was actually prejudicial. See *Smith v. Phillips*, which held that the defendant has the burden to show that there has been *actual* prejudice. 455 U.S. 209, 215-17 (1982). Reading and analyzing the Objections *seriatim* distracts from the overall conclusion that Ohio courts have done exactly what the Conditional Writ commanded.

Nonetheless, the individual objections require individualized analysis.

---

[2] The decision ordering the Conditional Writ in that case is reported at *McGail v. Noble*, 2018 WL 5984055 (S.D. Ohio Nov. 14, 2018).

**a. McGail objects to the Report and Recommendations' interpretation of this Court's initial Habeas Writ.**

In his first objection, McGail claims that both the Original Report and the two relevant state court opinions misinterpreted the Conditional Writ issued in McGail's first habeas corpus case, Case No. 3:17-cv-251 (Objections, ECF No. 23, PageID 970).

McGail objects that the Original Report here and the two state court decisions resulting from the Conditional Writ

> repeatedly conflated "impact on the jury" with an inquiry into the subjective thoughts of the jurors. (Report and Recommendation, Doc. No. 20, PageID 959, 963). Consideration of the "impact" the improper evidence had on the jury is properly viewed only through objective factors such as the content of the statement, the length of time spent discussing the extrinsic evidence, which jurors heard the statement, and the timing of when the statements was introduced.

(Objections, ECF No**.** 23, PageID 970, relying on *Sassounian v. Roe,* 230 F.3d 1097 (9th Cir. 2000).

Sassounian, an Armenian, was charged capitally in state court with assassinating the Turkish General Consul.  A "special circumstance" element which the jury had to decide was whether the murder was motivated by the victim's nationality.  After the verdict was returned, Juror Rankin notified the trial judge that there had been discussion in the jury room of a threatening telephone call made to the Turkish Consulate, a matter the court had excluded from evidence. Upon inquiry from the trial judge, three other jurors recalled discussion of the phone call, but others did not.  After the individualized inquiry, the trial judge declared there was no jury misconduct.

The murder in suit occurred in 1982.  Soussanian filed his federal habeas petition after exhausting California remedies but before the effective date of the Antiterrorism and Effective

4

Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") on April 24, 1996, so pre-AEDPA precedent controlled on the merits. See *Lindh v. Murphy,* 521 U.S. 320 (1997). The case was referred to a Magistrate Judge who recommended relief on the basis of juror misconduct, but the District Judge rejected that recommendation.  As in the present case, the fact of juror discussion of the telephone call was accepted and found to be unconstitutional juror misconduct.  The question for the federal habeas courts was harmlessness, determined under the standard adopted in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The circuit court held

> Before turning to the merits, we must determine what evidence may be considered in evaluating the jury's consideration of the improper evidence. Federal Rule of Evidence 606(b) provides that:
>
>> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention....
>
> A long line of precedent distinguishes between juror testimony about the consideration of extrinsic evidence, which may be considered by a reviewing court, and juror testimony about the subjective effect of evidence on the particular juror, which may not. *See, e.g., Rodriguez,* 125 F.3d at 744; *Dickson v. Sullivan,* 849 F.2d 403, 406 (9th Cir.1988) ("the question of prejudice is an objective, rather than a subjective, one"); *United States v. Bagnariol,* 665 F.2d 877, 884-85 (9th Cir.1981) ("Jurors may testify regarding extraneous prejudicial information or improper outside influences. They may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts."); *Rushen v. Spain,* 464 U.S. 114, 121 n. 5, 104 S.Ct. 453, 78 L.Ed.2d 267

5

(1983); *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892). As Justice Johnson noted, having to ignore the most direct evidence of prejudice-Rankins' testimony that she relied on the extrinsic information-lends an "Alice in Wonderland quality to the discussion of whether [Sassounian] was actually prejudiced by the admitted jury misconduct." *People v. Sassounian,* 226 Cal.Rptr. at 914. Nevertheless, the weight of authority and sound policy reasons support this view. *See, e.g., McDonald v. Pless,* 238 U.S. 264, 267-68, 35 S.Ct. 783, 59 L.Ed. 1300 (1915) (noting that finality of verdicts supports the rule). Therefore, although we may consider testimony concerning whether the improper evidence was considered, we may not consider the jurors' testimony about the subjective impact of the improperly admitted evidence. Even with this limitation, however, analysis of the relevant factors compels the conclusion that the fact that four jurors recalled discussing the phone call, when and how it occurred, the nature of the extrinsic evidence it introduced into the deliberations and the weakness of the trial evidence bearing on the special circumstance, had a "substantial and injurious effect or influence" on the special circumstance finding.

230 F.3d at 1108-09. Note that although the court reinforced the traditional distinction between objective and subjective impact, it found the "objective" evidence in that case sufficient to grant habeas relief.

The opinion does not discuss where the evidence of juror misconduct in that case was developed; its citation to Fed. R. Evid. 606(b) suggests that Magistrate Judge Eick may have held an evidentiary hearing in the habeas proceeding which would have been possible before *Cullen v. Pinholster*, 563 U.S. 170 (2011). On the other hand, *Soussanian* reflects the common law approach to *aliunde* evidence such that California probably had a parallel rule.

In *Soussanian*, the Ninth Circuit was enforcing a rule of evidence, not a rule of constitutional law. Rules of evidence, of course, are waivable by failing to make a contemporaneous objection to the admission of supposedly improper evidence. In this case the record is devoid of any citation to any objection McGail raised to admission of evidence about the

6

subjective impact of the juror misconduct on the other jurors. Indeed, in his appeal from Judge

Wall's denial of a new trial after the evidentiary hearing, he relies on that subjective impact.

> Kautz [fka Spiers] testified that she was influenced by the character
> evidence but the extrajudicial evidence changed, not only what she
> believed about McGail's church involvement, but also whether she
> believed McGail's testimony as a whole. "[W]hen I'm sitting here
> questioning to myself what kind of person he is and whether or not
> I think he would be capable of partaking in that, it had a large - - -
> that statement had a large impact on me." EH Tr., at 33. "[I]t just
> made me wonder, if he's lying about that then everything else they
> were saying about him, is that a lie too?" *Id.*

(Supplemental Brief to January 25, 2019, Evidentiary Hearing, State Court Record, ECF No. 14,

Ex. 37, PageID 651-52[3]). If testimony about the subjective impact of Westgerdes' comment on

the jury is prohibited by Ohio R. Evid. 606(B), where are the objections to questions seeking that

impact?

McGail claims in his Objections Judge Wall erred in relying on subjective impact in

making her decision. However, he made no complaint of that fact on appeal, instead stressing the

actual impact on Juror Spiers (Appellant's Brief, State Court Record, ECF No. 14, Ex. 41, PageID

726). McGail's appeal to the Supreme Court of Ohio quotes at length Juror Spiers' testimony

about how the Westgerdes' comment prejudiced her, i.e. what effect it had on her evaluation of

McGail's credibility (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 14,

Ex. 46, PageID 832).

The Magistrate Judge concludes McGail has been inconsistent in presenting his claim that

considering the subjective impact of Westgerdes' comment on the jurors is error He failed to make

---

[3] This Brief was signed by the same attorney who continues to represent McGail in this case.

a contemporaneous objection to its admission at the evidentiary and then filed to raise it as error on appeal.

The Original Report concluded that because McGail made his claim about subjective impact in the Ohio courts, he had not procedurally defaulted it, but the default lies earlier in failing to make a contemporaneous objection to admission of subjective impact evidence.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Ohio unquestionably has a rule requiring contemporaneous objection to evidence believed to be inadmissible. That rule has been repeatedly upheld by the Sixth Circuit as an adequate and independent rule of state procedure. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v.*

*Isaac,* 456 U.S. 107, 124-29 (1982).  Having failed to raise this asserted violation of Ohio R. Evid. 606(B) at any point in the state litigation, McGail is unable to raise it in those courts now.

McGail's first Objection is without merit and should be overruled.

**b. McGail objects to the Report and Recommendations' discussion of each of the factors McGail has pointed to in isolation, rather than how those factors, in totality, were likely to have an effect upon the hypothetical juror.**

McGail's second objection parallels the first and is likewise meritless.  Judge Wall discussed in great detail how no juror, all of whom except Spiers she found to be reasonable, was actually impacted by the Westgerdes' comment, again emphasizing "likely effect" on a "hypothetical juror."

Spiers' Affidavit as presented to this Court in the first habeas case persuaded this Court that the comment was likely to have a prejudicial effect on hypothetical rational jurors.  Upon that finding, we issued a Conditional Writ to give McGail the evidentiary hearing to which he was entitled under *Remmer v. United States*, 347 U.S. 227 (1954).[4]  As a result of that hearing, the credibility of the Spiers' Affidavit was completely undercut and McGail failed to prove actual prejudice.

As a sub-objection "McGail objects to the Report and Recommendations' discounting the importance of the religious nature of the extrinsic evidence."  It is difficult to discern how this supposedly happened.  The undersigned's discussion of the likely effect of perceived religious

---

[4] Note that *Remmer* was abrogated in part by the Supreme Court in *Smith v. Phillips*, which held that the defendant has the burden to show that there has been *actual* prejudice. 455 U.S. 209, 215-17 (1982); *see also United States v. Corrado,* 227 F.3d 528, 536 (6th Cir. 2000) (recognizing that *Smith v. Phillips* changed the *Remmer* rule and placed the burden on the defendant to show actual prejudice from *ex parte* juror communication); *Kowolak v. Scutt,* 712 F. Supp. 2d 657, 691-92 (E.D. Mich. 2010*)* (same).

hypocrisy in the first habeas case was part of what Judge Rice adopted. The Original Report in this case takes nothing away from those observations nor does it "discount" the relationship of the Westgerdes' comment to McGail's claimed religiosity. It does not mention, as the Objections note, McGail's testimony that he went to church after the murder to ask forgiveness for not stopping the crime. That testimony is completely self-serving and uncorroborated, even to the point of someone's testifying that McGail was in church on an occasion after the crime. The Magistrate Judge does not believe that testimony would have been persuasive.

**McGail objects to the Report and Recommendations' failure to discuss McGail's arguments regarding the centrality of McGail's credibility to his defense.**

To repair this perceived deficiency, the Magistrate Judge finds that McGail's credibility was central to his defense. The testimony of co-defendants placed McGail at the crime scene when the fatal shot was fired. There was no issue of possible false or mistaken identification. The testimony of his girlfriend to whom he confessed immediately after the shooting was powerful proof[5] which had to be overcome. Physical evidence including a keepsake knife McGail received from his grandfather was retrieved from the crime scene and presented. It seems relatively obvious, then, that McGail had to take the stand, making his credibility a critical issue.

To bolster his credibility, he was permitted to present from the youth director of his parish specific instances of church participation, centering on activities around the time of his confirmation around age twelve. Whether that negates evidence that some years later he was, by his own admission, involved in a plan to steal drugs at gunpoint from a rival drug dealer until, as he says, he withdrew from the plan after it was already in execution, required a credibility

---

[5] This was not a "jailhouse snitch" who was in a position to make up a false confession to garner favor with the prosecution.

determination from the jury. McGail's credibility was clearly important. He did not have an alibi or a retraction from either eyewitness or the girlfriend.

On the other hand, it is questionable how persuasive the religious practice evidence would have been. It is a not infrequent experience in contemporary American culture that persons who have been religiously active at twelve have become drug users by the time they are eighteen. Jurors could properly call upon this common experience to discount the religious practice bolstering.

It is clear from the evidentiary hearing that the Westgerdes' comment was not the subject of much discussion. Many jurors did not even hear it. The implication that Juror Spiers drew from it that Westgerdes was labeling McGail a liar she admitted was her own overgeneralized reaction which she did not share with other jurors. Because Catholic parishes often have multiple Masses on a weekend[6], the implication could have been that Westgerdes and the McGail family had chosen different times to go to church.

In sum, McGail's credibility was important to his defense. The Magistrate Judge hopes this discussion repairs any deficiency in the Original Report.


**McGail objects to the Report and Recommendations' conclusions regarding McGail's inability to diminish the impact of the Foreman's unconstitutional statements.**

The Objections assert that the Original Report faults McGail for "not presenting at the evidentiary hearing additional evidence of his religious practices" (ECF No. 23, PageID 974). That objection is well taken and the comment is withdrawn.

The Objections criticize the Original Report for "speculating" that the State may not have offered evidence to "challenge McGail's character evidence stating, 'it could well be that the State

---

[6] This possibility is adverted to in the evidentiary hearing although it is probably sufficiently widely known to be the subject of judicial notice.

wished to focus on the facts of the crime and regarded evidence of McGail's religious practices six or seven years earlier as a distraction." (Objections, ECF No. 23, PageID 975-76). McGail then offers what he calls an "equally likely possibility—McGail's testimony regarding church involvement was true and therefore cross-examination would not be effective." The testimony in question was about religious practice in the past, the distant past from the perspective of someone who had been a teen in between. In evaluating the Original Report, the Court may of course choose which inference is more likely, but there is no legal error in offering what the Magistrate Judge believes is the more likely inference.

**McGail objects to the Report and Recommendations' analysis of the strength of the evidence presented at trial.**

This objection is based on McGail's apparent belief that the District Court already decided in issuing the Conditional Writ in the first case that the evidence was strong enough for conviction, even considering the unconstitutional Westgerdes' comment. The Magistrate Judge does not read the Conditional Writ decision as having reached that conclusion; the District Judge will have to interpret his own decision in this regard. However, the Conditional Writ commanded not a result but a hearing and Judge Wall and the Second District were entitled, the Magistrate Judge believes, to reach a new decision based on all the evidence. It is that new decision which is entitled to deference under the AEDPA.

**McGail objects to the Report and Recommendations' determination that a different factual landscape permitted departure from this Court's prior analysis.**

This Court's analysis in the first habeas case was directed to deciding whether McGail was entitled to a *Remmer* hearing and concluded he was. Nothing in the Original Report in this case

12

suggests a "departure" from that prior analysis. However, the evidentiary hearing uncovered important facts about the testimony of Kylie Spiers. This Court relied in the first case on her Affidavit which was obviously uncross-examined hearsay, probably lawyer-constructed, and included statements of fact she did not affirm under oath and cross-examination. Paying attention to new testimony does not imply foreswearing prior analysis.

"McGail additionally objects to the Report and Recommendations failure to address his argument that the state courts determination that the foreman said he had not seen McGail in church "lately" was an unreasonable determination of the facts," (Objections, ECF No. 23, PageID 979). In the original Report, the undersigned wrote "It is now an adjudicated fact that the jury foreman told the jury that he himself was a member of that congregation and that he "had not seen McGail in church lately." The parties stipulated that this comment by the foreman violated McGail's constitutional rights." (ECF No. 20, PageID 953).

In his Objections McGail refers to "Memo in Support, Doc. No. 4, PageID 45" as the place at which he makes the argument that this was an unreasonable determination of the facts. There was competing evidence on what Westgerdes said and Judge Wall believed Westgerdes' recollection. Given the sources of the competing recollections, the brevity of the comment, and the length of time between the trial and the evidentiary hearing, there was sufficient evidence for Judge Wall to conclude Westgerdes said "lately" instead of "never." Judge Wall's credibility determination is entitled to deference.

**McGail objects to the Report and Recommendations' determination that the state courts' treatment of *Parker v. Gladden* was not contrary to and an unreasonable application of Supreme Court law.**

McGail did not argue that the state court decisions here were "contrary to" *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966), but rather that they were an unreasonable application of

*Parker*. The Original Report disagreed for the reasons given there (ECF No. 20, PageID 961). McGail argues the reasons he believes *Parker* is not distinguishable, but the Magistrate Judge disagrees for the reasons already given in the Original Report.

Interestingly, the Objections assert "The Report and Recommendations discusses Justice Holmes' dissent to note Justice Holmes "warned how the decision might encourage" defendants to "intimidate, beset, and harass" jurors. (Report and Recommendations at PageID 961)." The Report actually cites the dissenting opinion of Justice **Harlan** in *Parker*, not Justice **Holmes**. Holmes died March 6, 1935, and *Parker* was not decided until 1966.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge remains persuaded that the writ should be denied. In the first habeas case, this Court determined that McGail was entitled to a *Remmer* hearing to determine what comment the jury foreperson made to the jury and what the impact of that comment was. The Common Pleas Court conducted that hearing and determined that a constitutional violation had occurred – exposure of the jury to purported evidence which was not able to be confronted – but that the violation was harmless because no juror was prejudiced by it; Juror Spiers' testimony that she was prejudiced was thoroughly discredited. Because the Ohio courts decisions are entitled to deference under the AEDPA, the Petition should be dismissed with prejudice.

In the Original Report, the Magistrate Judge noted that final judgment in the case would require a decision on whether to issue a certificate of appealability (Original Report, ECF No. 20, PageID 965). Because the parties had not briefed the issue, the Original Report recommended the parties be required to brief it if the Original Report was adopted. *Id.* Neither party objected;

McGail has made a *pro forma* request for a certificate without briefing the question (Objections, ECF No. 23, PageID 982. The Magistrate Judge reiterates his recommendation for briefing on this question.

January 30, 2023.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

s/ *Michael R. Merz*
United States Magistrate Judge