IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATRICK A. MCGAIL, :

    Petitioner,

v. : Case No. 3:22-cv-119

WARDEN NORTH CENTRAL : JUDGE WALTER H. RICE
CORRECTIONAL INSTITUTION,

    Respondent. :

---

DECISION AND ENTRY ADOPTING THE UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #20) AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. #25), OVERRULING ALL OBJECTIONS OF PETITIONER THERETO (DOCS. ##23 AND 26) AND DENYING WRIT OF HABEAS CORPUS; JUDGMENT TO ENTER IN FAVOR OF RESPONDENT AND AGAINST PETITIONER; PETITIONER GRANTED A CERTIFICATE OF APPEALABILITY AND RIGHT TO APPEAL IN FORMA PAUPERIS; TERMINATION ENTRY

---

This matter is before the Court on Magistrate Judge Michael R. Merz's Report and Recommendations and Supplemental Report and Recommendations. Doc. ##20, 25. This Court has reviewed said reports and recommendations, the applicable law, and the objections thereto, and has conducted a thorough *de novo* review as well of the petition for writ of habeas corpus, state court record and exhibits, return of writ, and related filings. Doc. ##1, 6, 15, 19, 23, and 26.

For the reasons set forth below, the Court adopts both Reports and Recommendations and overrules any objections thereto, and, in doing so, denies the petition for a writ of habeas corpus.

I. **Procedural Background**

Patrick McGail ("McGail" or "Petitioner") was convicted by a jury of his peers in Miami County Common Pleas Court on August 14, 2014, of two counts of murder (O.R.C. § 2903.02(B)), one count of aggravated burglary (O.R.C. § 2911.11(A)(2)), and one count of aggravated robbery (O.R.C. § 2911.01(A)(1)), stemming from his participation in the armed home invasion of a drug dealer named Nathan Wintrow. *State v. McGail*, 55 N.E.3d 513 (Ohio Ct. App. 2015). After the conviction but prior to sentencing, McGail moved for a mistrial or an evidentiary hearing based on an affidavit from Juror Kylie Spiers[1] claiming that she was influenced to find McGail guilty by non-evidentiary statements by the jury foreman. *Id.* at 525. The trial court denied the motion, which was upheld on subsequent appeal. *Id.* After exhausting his options in the state judiciary, *see id.*, appeal denied, 145 Ohio St. 3d 1460 (2016), McGail petitioned this Court for a writ of habeas corpus, claiming that he was denied his Sixth Amendment right to an impartial jury trial due to the jury foreman's unexamined statements and Rule 606(B) of Ohio's Rules of Evidence. *See McGail v. Noble*, 2018 WL 5984055 at *2 (S.D. Ohio Nov. 14, 2018).

Upon the recommendation of the Magistrate Judge, this Court granted the writ and gave the Miami County Common Pleas ninety (90) days to hold an

---

[1] As noted by the Magistrate Judge, Doc. #20, PageID #953 n.4, this was the juror's name at the time of the trial, and while she now goes by the name "Kylie Kautz," this Court will refer to her as "Spiers" for consistency across the opinions.

2

evidentiary hearing on the matter. *Id.* at *8. When no appeal was raised in the federal courts, Miami County Common Pleas Judge Stacy Wall held an evidentiary hearing on the foreman's statement on January 25, 2019, and found that, while the statement did violate McGail's Sixth Amendment rights, it amounted to harmless error and the resulting conviction was affirmed. *See* Doc. #6-7. McGail appealed this ruling, which was affirmed by Ohio's Second District Court of Appeals, *State v. McGail*, 167 N.E.3d 70 (Ohio Ct. App. 2021), and after the Ohio Supreme Court denied permissive appeal, 163 Ohio St. 3d 1418 (2021), McGail filed the instant petition for a writ of habeas corpus on the sole ground that he was denied his Sixth Amendment right to confront witnesses and evidence in open court. Doc. #1.

## II. Factual Background

In summarizing the evidence submitted at trial and the facts underlying petitioner's two convictions, the Ohio Court of Appeals, Second Appellate District, Miami County, Ohio, presented the facts as follows:[2]

> In October 2014, McGail was convicted after a jury trial of murder, aggravated burglary, aggravated robbery, and a firearm specification. The charges stemmed from an armed home invasion of the home of Nathan Wintrow, a marijuana dealer, on the night of October 30, 2013, which was committed by McGail and two accomplices (Jason Sowers and Brendon Terrel). During the incident, Sowers shot and killed Wintrow.

---

[2] These binding factual findings "shall be presumed to be correct," unless rebutted "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). McGail has not provided sufficient evidence to rebut the presumption of correctness.

3

During the police investigation, officers located a U.S. Air Force survival knife that had been given to McGail by his deceased grandfather, a shoe, a handgun, and a white mask near the scene. McGail's knife and the discarded mask later were determined to have McGail's DNA on them. Shortly after the shooting, police found Sowers (wearing one shoe) in his car in the parking lot where he had left it. The police later discovered the handgun used to shoot Wintrow and another white mask in the car. At about the same time that Sowers was discovered, police officers found Terrel walking along another nearby street. While speaking with the officers, a third white mask fell from Terrel's sweatshirt. McGail went to the home of his girlfriend, Jessica Shelton, after the shooting.

Sowers admitted to participating in the home invasion. He told police that he and McGail had entered Wintrow's residence armed with guns and intending to steal marijuana. Sowers also admitted to being the person who shot Wintrow. Terrel admitted participating in the planning of the home invasion and serving as the lookout. He also implicated McGail. Prior to trial, Sowers and Terrel pled guilty to various charges, and both testified for the State at McGail's trial. Shelton testified at trial that McGail told her that he went inside Wintrow's residence with Sowers, had gotten into a fight, heard a gunshot, saw someone on the floor, and fled the house, dropping his mask and knife.

McGail testified in his own defense. With respect to the home invasion, he claimed that Brendon Terrel's older brother, Rick, who was also a marijuana dealer, created the plan to rob Wintrow. Although he admitted to being aware of the plan, McGail testified that he initially thought Rick Terrel was joking. According to McGail, Rick Terrel proceeded to obtain a gun and accompanied McGail, Sowers, and Brendon Terrel in the car they drove to the parking lot near Wintrow's residence. At that point, McGail claimed he realized they were serious and told the group he was not participating and was leaving. McGail testified that Rick Terrel responded by taking McGail's knife and cutting him. McGail fled, leaving behind his knife, mask, and cell phone. McGail testified that he initially walked to the square in downtown Troy, Ohio, before proceeding to his girlfriend's house. He denied telling his girlfriend that he was involved in the home invasion or the shooting.

McGail also presented several witnesses on his behalf. Among his witnesses were his sister, Autumn Kunkle, and youth ministry director for St. Patrick's Church, Diane Mengos. Kunkle testified about their family, the activities they did, McGail's hobbies, his personality, and

4

the knife he received from their grandfather. During her testimony, she stated that the family "[w]ent to church every Sunday [and] did various service activities for that."

Mengos testified that she had known McGail since his birth; Mengos stated that her children were about the same age as McGail and his siblings and they had all gone to the same school. Mengos stated that, in his "earlier years," McGail worked hard at school and was in boy scouts with her son. Mengos testified that she started working closely with McGail when he became a teenager and participated in many youth ministry activities at St. Patrick's Church. She stated that McGail helped with the church festival, did visits to nursing homes, collected coins for St. Vincent DePaul, and collected wrapping paper for Partners in Hope Christmas Shop. McGail participated in the confirmation program during 9th and 10th grades. During that time, he continued to help with the festival, helped at the soup kitchen, collected things for the needy, and joined the contemporary choir as a percussionist. The defense presented photographs of McGail in the church choir and the church musical cast, McGail working at the soup kitchen, and McGail at a youth ministry event in Fort Loramie. Mengos testified that McGail was involved in the Civil Air Patrol and that he had been thrilled to be involved in serving people and rescuing them; McGail also presented photographs of his participation in the Civil Air Patrol.

McGail provided limited testimony about his church involvement. He said that, growing up, church and school were the most important things for the family and they went to St. Patrick's. He identified himself and his brother in the photograph of the church choir. He said that he had friends at church and saw them when he was at church projects with the youth group, but outside of that, he did not have contact with them. McGail testified that to deal with the shame over not doing more to halt the home invasion, he went to church to ask for forgiveness. He did not testify to current or recent regular attendance at St. Patrick's Sunday services. *State v. McGail*, 167 N.E.3d 70, at 72–73 (Ohio Ct. App. 2021) (internal citations omitted).

As to the affidavit on alleged juror misconduct, the Ohio Court of Appeals, Second Appellate District, Miami County, Ohio, stated as follows:

On August 28, 2014, prior to sentencing, McGail filed a motion for mistrial based on juror misconduct, which the trial court construed as a motion for a new trial. McGail's motion was supported by an affidavit from Kylie Spiers, Juror #11, who swore to the following relevant facts:

5

> "3. My decision was influenced to vote 'Guilty' when the jury foreman David Westgerdes [Juror #5] told the jury that he goes to St. Patrick's church [sic] the same church that Patrick McGail testified going to and he had never seen Patrick or his family at that church, so he must be lying.
>
> 4. This information influenced me to not believe Patrick's testimony.
>
> 5. As a result, [sic] of Westegerdes [sic] personal representation, I found Patrick McGail 'Guilty'." *Id.* at 73.

### III. Merits

This case has previously appeared before the court. *See generally McGail*, 2018 WL 5984055. Because the issue presented in the instant habeas petition relies on similar—albeit more developed—facts than what informed the ruling in the previous petition, it is important to differentiate the facts and law involved with each petition.

Regarding the factual and procedural landscape existing at the time of McGail's first petition, he petitioned the trial court, in-between his conviction and sentencing, for either a retrial or an evidentiary hearing to address the above affidavit from Juror Spiers regarding an alleged statement made by a juror during deliberations that impacted the weight and credibility of McGail's testimony offered at trial. *Id.* at *1. The trial court denied the request, which was affirmed on appeal. *See generally State v. McGail*, 55 N.E.3d 513. The Ohio Second District Court of Appeals determined that, because "a 'trial court's post-verdict determination of extra-record prejudice must be an objective one,' focusing on the information's

6

probable effect on a 'hypothetical average juror[,]'" *id.* at 530 (quoting *United States v. Calbas*, 821 F.2d 887, 896, fn. 9 (2d Cir.1987)), McGail was not prejudiced because a hypothetical average juror would not have been influenced by the statement about church attendance. *Id.* Therefore, when this Court reviewed the state courts' decisions informing that petition, the Court's analysis was based solely on the content of McGail's testimony at trial, the *unexamined* allegations about the jury foreman's comment on McGail's church attendance presented in Juror Spiers' affidavit, and the state courts' determination that said misconduct was on its face harmless error and thus not prejudicial under the hypothetical reasonable juror standard. *See McGail*, 2018 WL 5984055 at *3–*8. From that information, this Court issued a conditional writ of habeas corpus requiring that McGail be either discharged or given an evidentiary hearing that would "concern questions of *what the jury foreperson said* about McGail and/or his family's church attendance and/or participation *and its impact on the jury* and its members." *Id.* at *8 (emphasis added). Based on the requirements laid out in *Remmer v. United States*, this evidentiary hearing needed to investigate and determine: (1) the circumstances of the *ex parte* information provided to the jury; (2) the impact that *ex parte* information had on the juror or jurors; and (3) whether that impact prejudiced McGail. *See* 347 U.S. 227, 230 (1954). Determining the statement's impact involved reviewing the decision to see whether there was a "substantial and injurious effect or influence [on] determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328

7

U.S. 750, 776 (1946)). In the Sixth Circuit, the burden of establishing actual prejudice is on the defendant. *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000) (citation omitted) (recognizing *Smith v. Phillips*, 455 U.S. 209, 215–17 (1982) changed and shifted the prejudice burden to the defendant).

Regarding McGail's second petition, while both parties stipulated that the statement about McGail and church constituted misconduct, Doc. #6-7, PageID #520 n.6, the trial court focused on the testimony of the jurors who convicted McGail to determine the content and circumstances of the statement. *See* Doc. #6-7, PageID ##520–24. They were asked about whether they heard the foreman's statement about McGail's church attendance, when during the proceedings the statement occurred, what language the foreman used in his statement, and what impact the jurors subjectively believed the statement had on their determination that McGail was guilty. *Id.* The hearing also covered the overall length and nature of the jury's deliberations on the entire case. *See generally id.*

From that hearing, Judge Wall, sitting as factfinder, determined that less than half of the jury recalled hearing the statement, that the foreman's testimony of his own statements was more credible than Juror Spiers's recollection, and that Juror Spiers's recollection—both as presented in the affidavit supporting the previous writ issued by this Court and as provided at the hearing—was incredible and not entitled to much weight. *Id.* at PageID ##523–24, 530–34. Based on all the jurors' memories of the deliberations, and factoring in her assessments on jurors' credibility, Judge Wall determined that "the foreman likely said that he had

8

not seen [McGail] in church 'lately' rather than 'never.'" Doc. # 6-7, PageID #524. Facts also adduced at the hearing showed "the comment was made in passing when reviewing photographic evidence showing [McGail] participating in church" and that "the comment consisted of one sentence that was not discussed by the jury as a whole." *Id.* at PageID #530. Judge Wall also found that the foreman made the statement "on the *first* day of deliberations" during the jury's only day discussing McGail's church attendance, *id.* at PageID #536 (emphasis in original), as opposed to Juror Spiers's testimony that the statement occurred on the final day of deliberations. *Id.* at PageID # 533.

Having learned the circumstances of the foreman's statement during deliberations, Judge Wall then relied on her credibility assessments of the various jurors to determine what impact, if any, the statement had on the ordinary and hypothetical juror and if that impact was prejudicial to McGail. *Id.* at PageID ##534–46. While McGail's petition and objections place a great deal of reliance on Juror Spiers's testimony being indicative of any hypothetical juror in the same situation, Judge Wall determined that Spiers's testimony was too incredible to be indicative of the ordinary, hypothetical juror. *Id.* at PageID ##534–44. Judge Wall found Spiers's testimony was not internally consistent across multiple retellings, *id.* at PageID ##536–38, differed from the rest of the jurors' recollections on facts that were not disputed by any other juror, *id.* at PageID ##538, 543, was out of step with how she acted and voted during deliberations, *id.* at PageID ##542–43, and that she appeared to have extensive communications with McGail's defense

9

counsel before, during, and after sentencing. *Id.* at PageID ##539–40. In contrast, Judge Wall relied on most of the other jurors' perspectives to determine that an ordinary hypothetical juror would not have been impacted by the statement, and thus found that the statement did not prejudice McGail. *Id.* at PageID ##545–46. Because there was "competing evidence on what [the foreman] said" and "[g]iven sources of the competing recollections, the brevity of the comment, and the length of time between the trial and evidentiary hearing," Doc. #25, PageID #997, Judge Wall had sufficient evidence to reach her conclusions about the statement and her determinations on the jurors' credibility as witnesses. Those determinations are entitled to deference by this Court. *See* 28 U.S.C. § 2254(d)(2).

McGail argues that Spiers's "reaction to the foreman's statement was provided to show that her reaction resembled what this Court ... believed would be the reaction of the hypothetical juror." Doc. #26, PageID #1001. This argument is without merit. During the proceedings involved with McGail's previous habeas petition, both the state courts and this Court assessed the likelihood of prejudice caused by "the information's probable effect on a 'hypothetical average juror.'" *McGail*, 55 N.E.3d at 530 (quoting *Calbas*, 821 F.2d at 896, fn. 9); *see also McGail v. Noble*, 2018 WL 950184 at *7 ((S.D. Ohio Feb. 20, 2018) (quoting *Calbas*, 821 F.2d at 896, fn. 9), report and recommendation adopted, 2018 WL 5984055 (S.D. Ohio Nov. 14, 2018). In addition, as also stated *supra*, the Court's previous analysis of this issue was limited to only the trial record and Juror Spiers's affidavit that the foreman told the jury "that McGail 'was lying' because

10

the foreman attended McGail's church and never saw McGail or his family there[.]" *McGail*, 2018 WL 5984055 at *6. It was this presentation of "[t]he foreman's unsworn testimony as to the 'true' character of McGail" that led this Court to determine that the statement was not a harmless error excusing the state courts' failure to address the matter. *Id.* at *7. Now, with the benefit of an evidentiary hearing and a new slate of facts informing the state courts' finding of harmless error, *State v. McGail*, 167 N.E.3d 70 (Ohio Ct. App. 2021), this Court's past reliance on Spiers's testimony carries no weight at this time in assessing the statement's impact as harmless error or not prejudicial based on the hypothetical juror.

Finally, McGail's arguments about Judge Wall's alleged reliance on the statement's subjective impact on the jurors, see Doc. #6, PageID #351; *see also* Doc. #23, PageID #970, are misplaced. Judge Wall did not use the jurors' subjective self-assessments of how the foreman's statement influenced their verdict as the basis for finding McGail was not prejudiced by the statement. Rather, as already discussed, Judge Wall used those subjective assessments in determining the actual content and circumstances of the foreman's statement, and ultimately found the actual statement differed significantly from Juror Spiers' recollections. From that determination, Judge Wall finally concluded that the ordinary, hypothetical juror would not have reacted to the statement as Juror Spiers claims to have been influenced, and, thus, McGail was not prejudiced by the misconduct. Doc. #6-7, PageID ##533–34, 546. For these reasons, and for those

11

laid out at greater length in the Magistrate Judge's Reports, Docs. ##20 & 25, the findings of the state courts were not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor were they "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## IV. Conclusion

Based on the foregoing, the Court ADOPTS the Report and Recommendations, Doc. #20, and the Supplemental Report and Recommendations, Doc. #25, and OVERRULES all Objections filed by Petitioner, Docs. ## 23 and 26. The Court herein denies a writ of habeas corpus.

Given that the Court's decision herein may be debatable among reasonable jurists, Petitioner is granted a certificate of appealability, and is granted leave to appeal *in forma pauperis*. Judgment will be entered in favor of Respondent and against Petitioner.[3]

---

[3] Although not dispositive on this Court's adoption of the Supplemental Report and Recommendations, Doc. #25, the Magistrate Judge addressed the disjointed arguments in the Petition, Doc. #6, and McGail's first Objection, Doc. #23, by recontextualizing the claim as an improperly raised objection to Ohio Rule of Evidence 606(B) as applied to juror testimony at the evidentiary hearing. Doc. #25, PageID ##988-93. The Court does not agree with this assessment and does not adopt the Supplemental Report and Recommendations' reframing of the claim, because, while scattered and disorganized, McGail's argument throughout the petition and objections was that "the Ohio courts improperly applied the constitutional standard for jury misconduct cases," Doc. #26, PageID #1001, not that the state courts failed to apply Ohio Evid. R. 606(B).

12

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: September 28, 2023

*Walter H. Rice*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE